Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
(406) 324-8011 (tel.)
bishop@westernlaw.org

John Mellgren, *application  for pro hac vice pending*
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR 97401
(541) 359-0992 (tel.)
mellgren@westernlaw.org

Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, MT 59807
(406) 549-3895 (tel.)
smcmillan@wildearthguardians.org

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS, a non-profit organization; CONSERVATION NORTHWEST, a non-profit organization; OREGON WILD, a non-profit organization, CASCADIA WILDLANDS, a non-profit organization,<br><br>Plaintiffs,<br><br>vs.<br><br>THE UNITED STATES DEPARTMENT OF THE INTERIOR, a federal department; SALLY JEWELL, in her official capacity as Secretary of the Interior; DANIEL ASHE, in his official capacity as Director of the U.S. Fish and Wildlife Service; and THE U.S. FISH AND WILDLIFE SERVICE, a federal agency, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

COMPLAINT FOR
DECLARATORY
AND INJUNCTIVE
RELIEF

Federal-Defendants.

                )
                )
                )

## INTRODUCTION

1. Plaintiffs, WildEarth Guardians *et al.*, hereby bring this civil action for declaratory and injunctive relief against the above named Federal-Defendants (the U.S. Fish and Wildlife Service or "the Service") pursuant to the citizen suit provision of the Endangered Species Act (ESA), 16 U.S.C. § 1540(g), and the Administrative Procedure Act (APA), 5 U.S.C. § 706, for violations of the ESA.

2. This case challenges the Service's September 12, 2014, revised designation of critical habitat for Canada lynx (lynx) in the contiguous United States, 79 Fed. Reg. 54782 (hereinafter "decision" or "revised critical habitat decision").

3. The Service's revised critical habitat decision designates critical habitat for lynx in the Northern Rockies and North Cascades, including portions of Montana, Wyoming, and Washington, but excludes the lynx's entire Southern Rocky Mountain range from the designation. All of the Southern Rockies, from south-central Wyoming, throughout western Colorado, and into north-central New Mexico, is excluded from the Service's revised critical habitat rule even though this area is home to a viable sub-population of lynx (approximately 120 individuals) and includes all of the habitat elements essential to the long-term survival and recovery of the species.

4. The Service's decision also excludes, without any analysis, important areas inhabited by lynx in Washington (the Kettle Range and Wedge), Idaho,

PAGE 1   WILDEARTH GUARDIANS v. INTERIOR

Montana, and Oregon from the revised designation. The best available science reveals many of these areas were occupied by lynx at the time of listing, remain currently occupied by lynx, and contain the habitat elements essential to the species' conservation in the contiguous United States.

5. Wherefore, Plaintiffs – a coalition of conservation organizations dedicated to ensuring the long-term survival and recovery of lynx and ensuring the Service bases critical habitat decisions on sound science – are hereby compelled to bring this civil action for declaratory and injunctive relief.

## JURISDICTION AND VENUE

6. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, 16 U.S.C. § 1540(c), and 5 U.S.C. § 704.

7. This Court has the authority to review the Service's action complained of herein, and grant the relief requested, pursuant to the ESA's citizen suit provision, 16 U.S.C. § 1540(g), and the APA, 5 U.S.C. § 706. All requirements for judicial review required by the ESA, including the requirement of providing sixty days notice of intent to sue prior to filing a civil action, are satisfied.

8. The relief sought is authorized by 28 U.S.C. § 2201 (Declaratory Judgment), 28 U.S.C. § 2202 (Injunctive Relief), 16 U.S.C. § 1540 (ESA), and 5 U.S.C. § 706 (APA).

9. Venue is properly before this Court pursuant to 16 U.S.C. § 1540 (g)(3)(A) and 28 U.S.C. § 1391(e).

10. There is a present and actual controversy between the Parties.

## PARTIES

11. Plaintiff WILDEARTH GUARDIANS is a non-profit organization

dedicated to protecting and restoring the West's wild places, rivers, and wildlife, including lynx. WildEarth Guardians has over 65,000 members and supporters and offices in Missoula, Montana, Denver, Colorado, and Santa Fe, New Mexico.

12. Plaintiff, CONSERVATION NORTHWEST, is a non-profit conservation organization based in Bellingham, Washington. Conservation Northwest was founded in 1988 and now has more than 9,000 members and supporters. Conservation Northwest is dedicated to the protection and restoration of wildlands and threatened and endangered species, including Canada lynx, in Washington State and southern British Columbia.

13. Plaintiff, OREGON WILD is a non-profit corporation with approximately 10,000 members and supporters throughout the state of Oregon and the Pacific Northwest. Oregon Wild and its members are dedicated to protecting and restoring the Pacific Northwest's wildlands, wildlife (including lynx), and waters as an enduring legacy.

14. Plaintiff, CASCADIA WILDLANDS is an Oregon non-profit corporation with approximately 12,000 members and supporters throughout the United States. Cascadia Wildlands educates, agitates, and inspires a movement to protect and restore Cascadia's wild ecosystems. Cascadia Wildlands has long sought to protect Cascadia's wild places and wildlife, including lynx.

15. Plaintiffs' members, staff, and supporters are dedicated to ensuring the long-term survival and recovery of lynx in the contiguous United States and ensuring the Service complies with the ESA and bases all critical habitat decisions on the best scientific and commercial data available.

16. Plaintiffs' members and staff live near and/or routinely recreate in areas

occupied by lynx and in lynx habitat in the contiguous United States.

17. Plaintiffs' members and staff enjoy observing and studying lynx in the wild, including signs of lynx presence throughout the species' current range. The opportunity to possibly view lynx or signs of lynx in the wild—by itself—is of significant interest and value to Plaintiffs' members and staff and increases their use and enjoyment of public lands.

18. Plaintiffs' members and staff derive aesthetic, recreational, scientific, inspirational, educational, and other benefits from lynx and lynx habitat, recreating in areas occupied by lynx, and in working to conserve lynx and obtain habitat protections for lynx, including critical habitat designation, in the contiguous United States. Plaintiffs' members and staff have worked and continue to work to conserve lynx and lynx habitat in the contiguous United States.

19. Plaintiffs' interests have been, are being, and unless the requested relief is granted, will continue to be harmed by the Service's revised critical habitat decision and actions and/or inactions challenged in this complaint. If this Court issues the relief requested the harm to Plaintiffs' interests will be alleviated and/or lessened.

20. Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is the federal department responsible for applying and implementing the federal laws and regulations challenged in this complaint.

21. Defendant SALLY JEWELL is sued in her official capacity as Secretary of the United States Department of the Interior. As Secretary, Ms. Jewell is the federal official with responsibility for all Service officials' inactions and/or actions challenged in this complaint.

22. Defendant DANIEL ASHE is sued in his official capacity as Director of

the U.S. Fish and Wildlife Service. As Director, Mr. Ashe is the federal official with responsibility for all Service officials' inactions and/or actions challenged in this complaint.

23. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is an agency within the United States Department of Interior that is responsible for applying and implementing the federal laws and regulations challenged in this complaint.

BACKGROUND

*Canada lynx (Lynx canadensis)*

24. On March 24, 2000, the Service listed the Canada lynx (lynx) as a threatened species under the ESA. 65 Fed. Reg. 16052.

25.  Lynx are medium-sized cats with long legs, large paws and webbed toes adapted to walking on snow, long tufts on the ears, and a short, black-tipped tail. Adult male lynx average about 22 pounds in weight and 33.5 inches in length (head to tail). Adult female lynx average about 19 pounds in weight and 32 inches in length.

*Diet*

26. Snowshoe hares are the primary prey for lynx. Snowshoe hares are widely distributed across North America and are associated with boreal and subapline forests. The species' range extends from Alaska, across most of Canada, and southward into large portions of the western United States, including the Cascades and Sierra Nevada Mountains (reaching into central California) and the Rocky Mountains (reaching into southern Utah and northern New Mexico).

27. The distributions of snowshoe hare and lynx overlap across much of North America. Snowshoe hare comprise 35-97% of the lynx's diet across the species' range. In Montana, studies reveal that even in areas with low hare densities

(0.04-0.02 hares per acre) snowshoe hares still accounted for 96% of biomass in the lynx diet. In Colorado, over 65% of all documented kills made by lynx where of snowshoe hares. In Washington, 81% of the kills located along lynx trails were snowshoe hare.

28. Studies reveal the summer diet of lynx may include a greater diversity of prey species than in winter, due to greater seasonal availability of prey. Lynx also turn to other prey species when relative densities of snowshoe hare populations are low. This is particularly true in the lynx's southern range where hare densities are lower.

29. Red squirrels are considered to be an important secondary food source for lynx and the main alternate prey during periods of low hare abundance. Other prey species taken by lynx include cottontail rabbits, grouse, flying squirrels, ground squirrels, porcupine, beaver, mice, vole, shrews, weasels, fish, and ungulates as carrion. Male lynx have opportunistically killed white-tailed deer and mule deer in the southern extent of their range when deep snow hindered deer movements and increased their vulnerability to predation.

*Lynx habitat*

30. Lynx are habitat specialists that, in the western United States, occur primarily in spruce-fir vegetation types (as opposed to dry ponderosa pine forests) that receive persistent snowfall.

31. Lynx select mature multi-storied stands with high horizontal cover and low topographic relief, primarily composed of mature Englemann spruce and subalpine fir trees with lesser components of lodgepole pine, Douglas fir and western larch. This environment supports a high density of snowshoe hares, the lynx's primary prey.

*Lynx reproduction*

32. Lynx breeding occurs during March or April. Male lynx are incapable of

breeding during their first year and males are not known to help rear their young.

33. Female lynx typically stay in natal dens on average for 21 days and may use 2-3 maternal dens in a given year. Litter size of adult female lynx averages 2-5 kittens during periods of hare abundance.

34. Natal and maternal den sites are used until kittens reach about 6-8 weeks of age. For denning habitat to be functional, it must be in or adjacent to foraging habitat. Common components of natal and maternal den sites are large woody debris (root wads and downed logs) and dense horizontal cover.

***Lynx movement***

35. The average home range for lynx is 39.6 square km (31.1 square km for females and 42.9 square km for males). Daily movements of lynx within their home ranges are centered on continuous forests. Lynx generally avoid large openings (both natural and created) when moving through their home ranges. Lynx travel, on average, about 4.2 miles per day but may increase daily movements when snowshoe hare densities decrease.

36. Lynx make exploratory, long-distance movements beyond identified home ranges. Distances of these exploratory movements in Montana ranged from about 15-40km with a duration away from the home range ranging from one week to several months.

37. Lynx are also known to disperse. Dispersal is the permanent movement of an animal to a new home range. Female lynx tend to establish home ranges adjacent to their mother while young males are more like to disperse. Dispersal distances of up to 620 miles have been recorded for lynx.

38. Longevity records indicate that lynx live up to 16 years in the wild, though life spans vary between regions due to different sources and rates of mortality.

*The lynx's historic and current range in the contiguous United States*

39. The historical range of lynx extends from Alaska across much of Canada (except coastal forests), with southern extensions into parts of the western United States, the Great Lake states, and New England.

40. Lynx distribution is closely aligned with the distribution of snowshoe hares and boreal forests which extend southward from northern Canada to subalpine forests in the western United States.

41. Historic and current lynx occurrence in Montana is well documented. Museum records, historic information, trapping data, and recent lynx surveys and research demonstrate persistence of lynx in western Montana. Lynx sub-populations have been documented in northwestern Montana, from the Purcell Mountains east to Glacier National Park, then south through the Bob Marshall complex and Seeley-Swan valley, Garnet Mountains, and along the Continental Divide, just south of Highway 12 (in the Helena National Forest). Lynx have also been verified in the Greater Yellowstone Area, portions of the Helena, Lolo, Flathead, Bitterroot, Gallatin, Kootenai, Custer, and Beaverhead-Deerlodge National Forest.

42. Western Montana contains boreal forest stands with the presence of snowshoe hares. These forest stands experience winter conditions with deep snow for extended periods of time, include sites for denning such as downed trees and root wads, and include matrix habitat allowing lynx to travel between patches of boreal forest.

43. Lynx presence has been documented historically and currently in western Wyoming, from the Wind River Range to the Yellowstone area. Lynx have also established home ranges in portions of south-central Wyoming, in the Southern Rockies. Tracking surveys have verified lynx presence in the Bridger-Teton National Forest, Wyoming Range, and the Shoshone National Forest.

44.   Lynx presence has been documented historically and currently in Idaho. Twenty-two museum species of lynx in Idaho were collected between 1874-1917. Thirteen other verified records of lynx were also reported prior to 1960. Most of these were from the north-central and northern regions of the State, with the exception of two lynx near the Wyoming border. Thirty-five verified records of lynx in Idaho exist between 1960 and 1991. The National Lynx Survey in 2000 detected lynx in the Boise National Forest.  A male lynx was detected in the Selkirk Mountains in 2010 and in 2011 and 2012 a lynx was detected in Idaho's Purcell Mountains.  Three lynx were recently captured in traps in Idaho: one on the Salmon-Challis National Forest in 2012, one in northern Idaho in 2013, and one in 2014 in Idaho's West Cabinet Mountains.

45.  Idaho's Clearwater National Forest, Boise National Forest, Salmon-Challis National Forest, Idaho Panhandle National Forest, Nez Perce National Forest, and Targhee National Forest contain boreal forest stands with the presence of snowshoe hares. These forest stands experience winter conditions with deep snow for extended periods of time, include sites for denning such as downed trees and root wads, and include matrix habitat allowing lynx to travel between patches of boreal forest.

46.  Verified records of lynx in Washington are numerous and well-distributed since the late 1800s. There are 78 museum specimens of lynx from Washington – more than any other state in the contiguous United States. Ten specimens were collected on Mt. Adams in the southern Cascade Range near the border with Oregon in 1896 and 1897. Additional specimens were also collected in southeastern Washington but most are from the north-central and northeastern portions of the State. According to trapping records, trappers regularly took a dozen or more lynx from remote areas in north-central and northeastern Washington each year in the 1940s. Thirty lynx were studied with radiotelemetry in

north-central Washington from 1981 to 1988, including three lynx that gave birth. From 1995-1999, 16 remote camera photographs of lynx were taken at bait stations in north-central Washington. The highest "harvest" of lynx in Washington is from Ferry County (Kettle Range and Wedge) where lynx have persisted and still persist.

47. The Kettle Range and Wedge areas in Washington contain boreal forest stands with the presence of snowshoe hares. These forest stands experience winter conditions with deep snow for extended periods of time, include sites for denning such as downed trees and root wads, and include matrix habitat allowing lynx to travel between patches of boreal forest.

48. The presence of lynx in Oregon in the late 1800s and early 1900s is documented by nine museum specimens collected from 1897 to 1927. Verified records of lynx occurrence in Oregon since that time are not common, but have occurred. Lynx have been found in the Willamette Valley, the Cascade range, Steens Mountain, and the Stinkingwater, Blue, and Wallowa Mountains. A lynx was verified in Wallowa County in 1964, in Benton County in 1974, and in Harney County in southeastern Oregon in 1993. The extent of lynx occurrence and population in Oregon remains unknown. No recent studies have documented the extent of lynx occurrences (or absence) in Oregon. Oregon supports sufficient lynx habitat, including a robust population of snowshoe hares.  Oregon contains boreal forest stands with the presence of snowshoe hares. These forest stands experience winter conditions with deep snow for extended periods of time, include sites for denning such as downed trees and root wads, and include matrix habitat allowing lynx to travel between patches of boreal forest.

49. Lynx presence has been documented historically and currently in the Southern Rockies, from south-central Wyoming, through Colorado, and into north-central New Mexico. There are 17 verified records of lynx from Colorado between 1878-1974.  In 1973, 2 lynx were trapped on Vail Mountain in Eagle County

Colorado. A statewide survey conducted by the Colorado Division of Wildlife, now known as Colorado Parks and Wildlife (CPW) from 1978-1980 concluded that a small population of lynx persisted in Eagle, Pitkin, Lake, and Clear Creek Counties with evidence of lynx occurrence in Grand and Park Counties.

50. From 1999 to 2006, 218 lynx were reintroduced into Colorado's San Juan Mountains. In 2010, after completing over a decade of monitoring, CPW announced that all of the benchmarks for a successful lynx reintroduction had been met. The reintroduced lynx: (1) demonstrated a high rate of survival and low mortality rates over the long term (particularly in good habitat); (2) remained in good habitat at densities sufficient for breeding; (3) reproduced successfully and are "recruiting" lynx into the population; and (4) on balance, lynx recruitment equaled or exceeded mortality over an extended period of time.  Based on radiotelemetry location data, lynx presence is verified on all national forests in Colorado, Rocky Mountain National Park, the Medicine Bow National Forest in Wyoming, and the Carson and Santa Fe National Forests in New Mexico.

51. Lynx likely inhabited portions of north-central New Mexico, where high elevation montane forest habitat for lynx is contiguous with occupied habitat in Colorado. It is likely that lynx occurred in New Mexico but were extirpated prior to being documented by scientists. Since CPW's reintroduction effort, at least 61 lynx have traveled into north-central New Mexico.  At least 6 lynx have been killed in New Mexico since 1999. North-central New Mexico was occupied by lynx in 2000 and includes boreal forest stands with the presence of snowshoe hares. These forest stands experience winter conditions with deep snow for extended periods of time, include sites for denning such as downed trees and root wads, and include matrix habitat allowing lynx to travel between patches of boreal forest.

### *The designation of critical habitat for lynx*

52.  Pursuant to Section 4(a)(3)(A) of the ESA, 16 U.S.C. § 1533(a)(3)(A),

the Service is directed to designate and revise, as appropriate, habitat for listed species which is considered to be "critical habitat" for the species. "Critical habitat" is defined as: (1) specific areas occupied by the species at the time of listing on which are found those physical and biological features essential to the conservation of the species and which may require special management considerations; or (2) specific areas not occupied by the species at the time of listing but nonetheless deemed essential to the conservation of the species. 16 U.S.C. § 1532 (5)(A).

53. The "physical and biological features" essential to the conservation of a species include, but are not limited to, cover and shelter, sites for breeding, areas with sufficient food and water, space for growth, and protected habitat. 50 C.F.R. § 424.12(b).

54.   In order to identify areas for critical habitat designation, the Service identifies the "primary constituent elements" or PCEs of these features for each species. The PCEs are the building blocks or specific elements that make up the physical and biological features for a particular species. If the PCEs - as identified by the Service - are present in areas occupied by lynx at the time of listing, then the area is deemed essential to the conservation of the species and qualifies for critical habitat designation.

**_The Service's November 9, 2006, designation of critical habitat for lynx_**

55.   On November 9, 2006, the Service issued a final rule designating critical habitat for lynx in the contiguous United States. 71 Fed. Reg. 66008.

56. The Service's 2006 rule designated approximately 1,841 square miles of critical habitat for lynx in three states: Montana, Washington, and Minnesota. The Service's 2006 rule excluded all National Forest and BLM lands from the critical habitat designation

57.   The Service's 2006 rule states that the PCEs for lynx are "boreal forest landscapes supporting a mosaic of differing successional forest stages and

containing: (i) the presence of snowshoe hares and their preferred habitat conditions; (ii) winter conditions that are generally deep and fluffy for extended periods of time; and (iii) sites for denning that have abundant coarse woody debris.

58.  The Service's 2006 rule excluded the entire Southern Rocky Mountains (south-central Wyoming, Colorado, and north-central New Mexico) from the critical habitat designation. The Service stated that in "the Southern Rockies it is still uncertain whether a self-sustaining lynx population will become established as a result of Colorado's reintroduction effort." 71 Fed. Reg. at 66010.  The Service said the "reintroduction effort" is not "essential" to the recovery of lynx and noted that the Southern Rockies "are not directly connected to lynx populations in Canada." *Id*.

59. The Service's 2006 rule excluded north-central and northeastern Washington (Kettle and Wedge ranges) from the critical habitat designation because, according to the Service, there "is no evidence that a lynx population has occupied the Kettle Range since 1995." 71 Fed. Reg. at 66010.

60. The Service's 2006 rule excluded areas deemed occupied by lynx in Idaho and Montana at the time of listing from the critical habitat designation because they are located on National Forest and BLM lands which convey "considerable management attention for lynx."

61. On July 20, 2007, the Service announced it would review the 2006 critical habitat rule after questions were raised about the integrity of scientific information used and whether the decision made was consistent with the appropriate legal standards. The Service's review of the 2006 rule determined that it was improperly influenced by then deputy assistant secretary of the Interior Julie MacDonald and, as a result, may not be supported by the record, may not be adequately explained, or may not comport with the best available science.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*The Service's February 25, 2009, designation of critical habitat for lynx*

62. On February 25, 2009, the Service issued a revised rule designating critical habitat for lynx in the contiguous United States. 74 Fed. Reg. 8616.

63. The Service's 2009 revised rule designated approximately 39,000 square miles of critical habitat for lynx in the contiguous United States in the states of Maine, Minnesota, Montana, Wyoming, Idaho, and Washington.

64. The Service's 2009 rule states the PCEs for lynx are "boreal forest landscapes supporting a mosaic of differing successional forest stages and containing: (i) the presence of snowshoe hares and their preferred habitat conditions; (ii) winter conditions that are generally deep and fluffy for extended periods of time; and (iii) sites for denning that have abundant coarse woody debris; and (iv) matrix habitat (e.g., hardwood forest, dry forest, non-forest, or other habitat types that do not support snowshoe hares) that occurs between patches of boreal forest in close juxtaposition.

65. The Service's 2009 revised rule excluded the entire Southern Rocky Mountains (south-central Wyoming, Colorado, and north-central New Mexico) from the critical habitat designation. The Service stated that "it is still uncertain whether a self-sustaining lynx population will become established as a result of Colorado's reintroduction effort." 74 Fed. Reg. at 8619. The Service also stated that "the Southern Rockies contain marginal habitat, are on the southern limit of the species' range, and have not been shown to support a breeding population of lynx. Therefore, we find that habitat in Colorado is not essential to the conservation of the species." *Id*.

66. The Service's 2009 rule excluded north-central and northeastern Washington (Kettle and Wedge ranges) from the critical habitat designation because, according to the Service, while the area "historically supported lynx populations" and "boreal forest habitat within the Kettle Range appears to contain

habitat for lynx" there is "no evidence that the Kettle Range is currently occupied by a reproducing lynx population." 74 Fed. Reg. at 8619.

67. The Service's 2009 rule excluded areas deemed occupied by lynx in Idaho and Montana at the time of listing from the critical habitat designation, including, but not limited to, portions of the Idaho Panhandle National Forest, Clearwater National Forest and Targhee National Forest in Idaho and portions of the Lolo National Forest, Kootenai National Forest (Cabinet Mountains), Bitterroot National Forest, Helena National Forest (area south of Highway 12, along the Continental Divide), Gallatin National Forest, and Beaverhead-Deerlodge National Forest. No explanation for these exclusions was provided. The Service's 2009 rule also excluded Oregon from the revised critical habitat rule without any explanation.

68. In 2010, the U.S. District Court for the District of Montana issued a decision in *Alliance for the Wild Rockies v. Lyder*, 728 F. Supp.2d 1126 (D. Mont. 2010), finding several flaws in the Service's 2009 revised critical habitat rule. The Plaintiffs in this case were not a party in the *Lyder* case. The Court in *Lyder* kept the 2009 revised critical habitat rule in place but ordered the Service to undertake a new analysis and determination, consistent with the Court's memorandum opinion and order.

**The Service's September 12, 2014, designation of critical habitat for lynx**

69. On September 12, 2014, the Service issued a second revised rule designating critical habitat for lynx in the contiguous United States. 79 Fed. Reg. 54782.

70. The Service's 2014 revised rule designates approximately 38,954 square miles of critical habitat for lynx in the contiguous United States in the states of Maine, Minnesota, Montana, Wyoming, Idaho, and Washington. The 2014 rule designates less than the total acreage of critical habitat designated under the 2009 revised rule.

71. The Service's 2014 rule states the PCEs for lynx are boreal forest landscapes supporting a mosaic of differing successional forest stages and containing: (i) presence of snowshoe hares and their preferred habitat conditions; (ii) winter conditions that provide and maintain deep fluffy snow for extended periods of time; (iii) sites for denning that have abundant coarse woody debris; and (iv) matrix habitat (e.g., hardwood forest, dry forest, non-forest, or other habitat types that do not support snowshoe hares).

72. In the 2014 revised rule, the Service determined that no areas "unoccupied" at the time of listing are essential to the conservation of the species. The Service only considered areas "occupied" at the time of listing for potential inclusion in the revised critical habitat rule.

73.  The Service's 2014 revised rule excludes the entire Southern Rocky Mountains (south-central Wyoming, Colorado, and north-central New Mexico) from the critical habitat designation. The Service stated that the Southern Rockies was excluded because the areas likely do not "possess the physical and biological features essential to lynx in sufficient quantity and spatial arrangement to sustain lynx populations over time. Therefore, we find that the habitat in Colorado and elsewhere in the Southern Rocky Mountains does not contain the PCE[s]." 79 Fed. Reg. at 54817. The Service states that the Southern Rockies was also excluded because of the area's distance and isolation from Canada and other lynx populations in the contiguous United States and low snowshoe hare densities. The Service also determined that "there is no reliable evidence that lynx populations" were ever established in Colorado or elsewhere in the Southern Rockies

74. The Service's 2014 rule excluded north-central and northeastern Washington (Kettle and Wedge ranges) from the critical habitat designation because, according to the Service, there "is no evidence that the area was occupied by lynx at the time of listing." The Service also stated that "the spatial

configuration and quantity of habitat do not appear to be sufficient to provide for the conservation of lynx."

75.  The Service's 2014 rule excluded areas deemed occupied by lynx in Idaho and Montana at the time of listing from the critical habitat designation, including, but not limited to, portions of the Idaho Panhandle National Forest, Clearwater National Forest and Targhee National Forest in Idaho and portions of the Lolo National Forest, Kootenai National Forest, Bitterroot National Forest, Helena National Forest (area south of Highway 12, along the Continental Divide), Gallatin National Forest, and Beaverhead-Deerlodge National Forest. The Service determined that these areas were either not occupied by lynx at the time of listing or lack the PCEs in adequate quantity and spatial arrangement. The Service's 2014 rule also excluded Oregon from the revised critical habitat rule without any explanation.

COUNT I<br>ESA VIOLATION<br>(failure to utilize the best available science)

76. Plaintiffs incorporate by reference all preceding paragraphs.

77. Pursuant to Section 4(b)(2) of the ESA, 16 U.S.C. § 1533(b)(2), the Service's implementing regulations, and the Service's policy, the Service must base critical habitat decisions "on the basis of the best scientific data available" (hereinafter "best available science").

78. The Service's September 12, 2014, revised critical habitat decision was not based on the best available science on lynx, including, but not limited to, information on the species' historic and current range, range and occupancy at the time of listing in 2000, habitat requirements, movements, conservation value of certain areas for lynx, and threats to the species (both current and reasonably foreseeable future threats).

79. The Service's failure and/or refusal to utilize the best available science violates Section 4 of the ESA, 16 U.S.C. § 1533, and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law " and/or constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

COUNT II
ESA and APA VIOLATIONS
(definition and application of the PCEs)

80. Plaintiffs incorporate by reference all preceding paragraphs.

81. Pursuant to Section 4(a)(3)(A) of the ESA, 16 U.S.C. § 1533(a)(3)(A), the Service is directed to designate and revise, as appropriate, "critical habitat" for listed species. "Critical habitat" is defined as: (1) specific areas occupied by the species at the time of listing on which are found those physical and biological features essential to the conservation of the species and which may require special management considerations; or (2) specific areas not occupied by the species at the time of listing but nonetheless deemed essential to the conservation of the species. 16 U.S.C. § 1532(5)(A).

82. The "physical and biological features" essential to the conservation of a species include, but are not limited to, cover and shelter, sites for breeding, areas with sufficient food and water, space for growth, and protected habitat. 40 C.F.R. § 424.12(b). In order to identify areas for critical habitat designation, the Service identifies the "primary constituent elements" or PCEs of these features.

83. The Service determined the PCEs for lynx are boreal forest landscapes supporting a mosaic of differing successional forest stages and containing: (i) presence of snowshoe hares and their preferred habitat conditions; (ii) winter conditions that provide and maintain deep fluffy snow for extended periods of time; (iii) sites for denning that have abundant coarse woody debris; and (iv) matrix

habitat (e.g., hardwood forest, dry forest, non-forest, or other habitat types that do not support snowshoe hares).

84. In defining the PCEs for lynx, the Service: (a) relied on overly broad and vague terms (e.g., boreal forest, "presence of snowshoe hares," matrix); (b) relied on outdated and/or incomplete science; (c) failed to properly explain and define the terms included in the PCEs; and (d) failed to include an element in the PCEs to ensure the maintenance and recruitment of lynx winter habitat, i.e., mature, multi-storied forest stands with sufficient horizontal cover, which is critical to the long-term survival and recovery of the species.

85.  In applying the PCEs for lynx, the Service; (a) relied on criteria not included in the PCEs for lynx and/or authorized by the ESA; (b) relied on criteria that the Service does not know how to define and/or measure; (c) failed to apply a PCE analysis to certain, important areas for lynx known to be occupied by lynx at the time of listing; (d) failed to demonstrate, and/or provide support for its conclusion that PCEs are absent from areas excluded; and (e) failed to respond and/or refute peer review and public comments on the existence of PCEs in areas excluded.

86. The Service's failure and/or refusal to properly define and apply the PCEs when revising critical habitat for lynx violates Section 4 of the ESA, 16 U.S.C. § 1533, the ESA's implementing regulations, and the Service's policy, and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law " and/or constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

COUNT III
ESA and APA VIOLATIONS
(definition and application of "occupied")

87. Plaintiffs incorporate by reference all preceding paragraphs.

88. Under the ESA, "critical habitat" is defined as: (1) specific areas occupied by the species at the time of listing on which are found those physical and biological features essential to the conservation of the species and which may require special management considerations; or (2) specific areas not occupied by the species at the time of listing but nonetheless deemed essential to the conservation of the species. 16 U.S.C. § 1532(5)(A).

89. In the 2014 revised critical habitat rule, the Service states that the definition of "occupied" took into account two variables: (1) whether the area was within the lynx's known historic range based on McKelvey et al. (2000a) and Hoving et al. (2003); and (2) whether verified occurrence records of lynx since 1995 exist. Under the Service's definition both variables must be met in order for an area to be deemed "occupied" by lynx at the time of listing. To be considered a "verified" lynx record, the Service requires an animal (live or dead) in hand or observed closely by a person knowledgeable in lynx identification, genetic (DNA) confirmation, snow tracks but only when confirmed by genetic analysis, or location data from a radio or GPS-collared lynx.

90. The Service's definition of "occupied" conflicts with the best available science on lynx (including science on longevity) and how the term is defined by other agencies, is inconsistent with how the term "occupied habitat" was defined, determined, understood, and how occupancy was verified when lynx were listed in March, 2000, and is too restrictive for lynx, a species that is rare and difficult to detect.

91. The Service's determination that certain areas were "unoccupied" at the time of listing is also not based on the best available science, ignores verified

occurrence records, is premised on incomplete and insufficient data, relies on the lack of surveys or lack of reasonable efforts to confirm the presence of lynx in areas where lynx have been trapped and are known to exist by local residents and state agencies, and incorrectly assumes areas historically occupied by lynx are "unoccupied" unless proven otherwise.

92. The Service's determination that areas deemed "unoccupied" at the time of listing are "not essential to the conservation and recovery" of lynx in the contiguous United is also not based on the best available science, consistent with or supported by evidence presented to the Service, or made in accordance with the ESA.

93. The Service's definition and application of the term "occupied" in the 2014 revised critical habitat rule violates the ESA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law " and/or constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

COUNT IV
ESA and APA VIOLATIONS
(insufficient data and no rational connection between facts and decision)

94. Plaintiffs incorporate by reference all preceding paragraphs.

95. Pursuant to the ESA and APA, the Service's revised critical habitat decision for lynx must be supported by reliable and sufficient evidence and there must be a rational connection between the facts found and the decision made.

96. The Service's decision to exclude the Southern Rockies, Oregon, portions of Washington (Kettle Range and Wedge), Idaho, and Montana from the critical habitat designation is not supported by reliable and sufficient evidence, is premised on contorted and manipulated data, and there is no rational connection

between the evidence in the record and the Service's decision.

97. The Service's revised critical habitat decision for lynx violates the ESA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law " and/or constitutes "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 706 (2)(A), 706 (1).

REQUEST FOR RELIEF

98. Plaintiffs incorporate by reference all preceding paragraphs.

99. WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.  Issue a declaratory judgment that the Service's September 12, 2014, revised critical habitat decision for lynx violated the ESA and is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and/or constitutes "agency action unlawfully withheld or unreasonably delayed" under the APA;

B. Issue an order remanding this matter back to the Service for further analysis and action consistent with the law and this Court's memorandum opinion and order;

C. Retain continuing jurisdiction of this matter until the Service fully remedies the violations of law complained of herein;

D. Issue such injunctive relief as Plaintiffs may subsequently request;

E. Grant Plaintiffs their costs and expenses of litigation, including reasonable attorneys' fees pursuant to 16 U.S.C. § 1540(g);

F. Grant such other relief that this Court deems necessary, just, and proper.

Respectfully submitted this 17th day of November, 2014.

/s/ Matthew K. Bishop
Matthew K. Bishop

Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
(406) 324-8011 (tel.)
bishop@westernlaw.org

/s/ John Mellgren
John Mellgren, *application for pro hac vice pending*
Western Environmental Law Center
1216 Lincoln Street
Eugene, OR 97401
(541) 359-0992 (tel.)
mellgren@westernlaw.org

 /s/ Sarah McMillan
Sarah McMillan
WildEarth Guardians
P.O. Box 7516
Missoula, MT 59807
(406) 549-3895 (tel.)
smcmillan@wildearthguardians.org

Counsel for Plaintiffs